UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| **MAUREEN METZGER,**<br>**6148 Meadowgrove Loop**<br>**Wilmington, NC 28409**<br><br>*Plaintiff*,<br><br>**v.**<br><br>**THE RECTOR AND VISITORS OF THE**<br>**UNIVERSITY OF VIRGINIA,**<br>**NW Wing, The Rotunda**<br>**P.O. Box 400222**<br>**Charlottesville, VA 22904-4222,**<br><br>*Serve*:<br>**Whittington W. Clement, Rector,**<br>**951 East Byrd Street**<br>**Richmond, VA 23219,**<br><br>*Defendant*. | Civil Action No. <u>3:23-cv-00058</u> |

## CIVIL COMPLAINT FOR EQUITABLE
## AND MONETARY RELIEF AND JURY DEMAND

Plaintiff Dr. Maureen Metzger ("Metzger"), by and through counsel, files this civil

complaint against the Rector and Visitors of the University of Virginia ("UVA") for

discrimination based on age in violation of the Age Discrimination in Employment Act, 29

U.S.C. § 621 *et seq*. ("ADEA"), discrimination based on sex plus age (intersectional), and race in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"),

retaliation for protected activity in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, *et seq*. ("Title VII"), gender discrimination in violation of Title IX, 20 U.S.C. §

1681(a) ("Title IX"), retaliation for protected activity in violation of Title IX, 20 U.S.C. §

1681(a) ("Title IX");  and a common law claim for breach of contract.

## JURISDICTION AND VENUE

1.      This Court has personal jurisdiction over Defendant UVA because it has substantial business contacts with and conducts business in the Commonwealth of Virginia.

2.      This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States of America, namely the ADEA and Title VII.

3.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Metzger's breach of contract claim since it arises from the same set of facts and forms the same case or controversy as a claim that is subject to the original jurisdiction of this Court.

4.      Venue in this district and division is appropriate pursuant to 28 U.S.C. § 1391 because UVA has significant and deliberate contacts with this district and division.

5.      Venue in this district and division is also appropriate pursuant to 28 U.S.C. § 1391 because it is the district and division where the substantial majority of the events giving rise to these claims occurred.

## PARTIES

6.      Metzger currently resides in Wilmington, NC, and lived in Charlottesville, Virginia during the majority of her time working for UVA. UVA employed Metzger from July of 2015 through July of 2023.

7.      The Rector and Visitors serve as the corporate board for UVA and are responsible for the long-term planning of UVA.

## ADMINISTRATIVE EXHAUSTION

8.      On July 18, 2022, Metzger submitted a complaint of discrimination with the

Virginia Office of the Attorney General – Office of Civil Rights ("OCR") in Richmond. On July

20, 2022, the OCR sent a cover letter to Metzger confirming receipt of the complaint on July 18,

2022 and provided a date stamped copy of the complaint. This complaint was based on age

discrimination, racial discrimination, and retaliation.

9.      On August 31, 2022, Metzger received a letter referring her case to the Equal

Employment Opportunity Commission ("EEOC"). This completed the OCR's investigation of

her case.

10.     On March 31, 2023, Metzger amended her charge with the Virginia OCR office,

and cross filed that amendment with the EEOC. This amendment included claims of gender

discrimination, and an intersectional claim of age and gender discrimination. This amendment

was received by the OCR office and the EEOC office on April 5, 2023.

11.     On May 1, 2023, pursuant to Va. Code § 2.2-814, Metzger gave the President of

UVA, James Ryan ("Ryan") notice of all her potential claims against the University of Virginia.

This included claims of discrimination based on race, age, and gender, an intersectional

discrimination claim based on her age and gender, retaliation, and breach of contract.

12.     On October 17, 2023, Metzger received a right to sue letter from the EEOC

office, mandating that she file a complaint supporting her claims within 90 days.

## FACTUAL ALLEGATIONS

13.     Metzger was a former assistant professor in the Acute and Specialty Care

Department ("Department") at the UVA School of Nursing ("SON").

14.     Metzger is a Caucasian woman and is 61 years of age.

15.     In or around 1984, Metzger graduated with a Bachelor of Science in Nursing.

16.     For the next 20 years, Metzger provided care to people with life-limiting illnesses,

working in oncology and hospice.

17.     In or around 2005, Metzger went back to school at the University of Rochester ("Rochester"), and in 2007 Metzger obtained her Master of Science in Nursing.

18.     Metzger continued working towards her Doctor of Philosophy ("Ph.D.") in Health Practice Research at Rochester, and she earned a prestigious pre-doctoral fellowship in or around 2010 with the National Institute of Nursing Research, one of the branches of the National Institutes of Health ("NIH"), which funded Metzger's Ph.D. dissertation.

19.     In or around 2012, Metzger graduated with her Ph.D. from Rochester.

20.     In or around 2013, Metzger took a position as a postdoctoral fellow at the University of North Carolina ("UNC") at Chapel Hill.

21.     This position at UNC was through an NIH-funded T32 grant. A T32 grant provides domestic, nonprofit, and private or public graduate-level academic institutions with funds for training predoctoral and postdoctoral candidates.

22.     T32 grants are highly competitive, highly sought after, and only awarded to candidates who show strong research promise.

23.     In or around February 2015, Metzger visited the UVA School of Nursing ("SON") for an employment discussion.

24.     At that time, Dorrie Fontaine ("Fontaine") was the Dean of the SON, Christine Kennedy ("Kennedy") was the Associate Dean for Academic Programs, and Susan Kools ("Kools") was the Associate Dean for Diversity and Inclusion.

25.     In or around July 2015, UVA hired Metzger as a tenure-track faculty as a Roberts Scholar, and Metzger began working for the UVA SON as an assistant professor. Being a Roberts Scholar meant that Metzger was supposed to have a reduced teaching and service

requirement, allowing Metzger to dedicate time for research.

26.     Tenure-track faculty members at UVA are evaluated based on three categories: teaching, service, and scholarship. The scholarship category is focused primarily on a faculty member's research endeavors.

27.     Metzger's research focuses primarily on improving quality of life for patients and families by creating and implementing interventions to empower patients to meaningfully participate in treatment-related decision making.

28.     Despite Metzger's Roberts Scholar designation, UVA's SON assigned her a heavy teaching load starting early on in her employment with UVA. Metzger had never taught a course prior to 2016, but the UVA SON obligated Metzger to develop a new full cohort course, with both clinical and didactic components, in a new curriculum.

29.     Metzger was older than her younger, similarly situated, colleagues who were also assistant professors and in the tenure-track program at UVA.

30.     In or around 2018, Metzger also began researching inclusive pedagogy, and her research into inclusive pedagogy included minority students as well as students from historically underrepresented groups in nursing (especially nurses of differing races), highlighted the unique perspectives of UVA students from racially and ethnically diverse backgrounds, and this reflected favorably on the SON. This research was done with the support of Dean Fontaine, Kools, the IDEA Program, and the Center for Teaching Excellence at UVA.

31.     Metzger's important findings on inclusive pedagogy were disseminated at workshops, conferences, and published in highly regarded peer-reviewed journals.

32.     Metzger's research on inclusive pedagogy was conducted in addition to, not in lieu of, her clinical research.

33.     Metzger's research on inclusive pedagogy was enthusiastically supported by Fontaine and Kools and was aligned with priorities at the SON, UVA, and the American Association of Colleges of Nursing ("AACN").

34.     On March 19, 2018, Metzger had her mid-tenure review ("MTR") with UVA. The MTR Committee appointed for Metzger, consisted of Dr. Barbra Mann-Wall, Dr. Ken White, and Dr. Ishan Williams. The MTR provided an opportunity to discuss Metzger's progress toward tenure and provide guidance and feedback. During her MTR, Metzger expressed concerns regarding her teaching load as compared with her tenure-track peers, but no changes were made to her teaching assignment. Ultimately, the review was positive, mutual goals were established, and her contract was renewed for another 3 years. It is widely understood that accomplishing the goals established during MTR is essential for promotion without term. Despite providing evidence of achieving these goals, this milestone went unacknowledged by the Advancement, Promotion and Tenure Committee ("APT") at the SON and by Dean Cipriano, during the tenure review, and by the provost's committee during the appeal process.

35.     On or around July 31, 2019, Fontaine retired as the UVA SON Dean, and despite a national search for Fontaine's replacement, no one was identified. Cipriano, who had no prior history working in academia, was named the Interim Dean of the SON.

36.     Cipriano's appointment was intended to last only long enough to cover the gap until a permeant dean could be hired. However, the onset of the COVID-19 pandemic extended Cipriano's tenure, and extended the search for a permanent Dean of the SON.

37.     On April 10, 2020, Metzger had her Annual Faculty Evaluation for calendar year 2019, with Dr. Beth Epstein ("Epstein"), the Chair of the Acute and Specialty Care Department at that time. Although on "paper" Metzger's evaluation met or exceeded criteria, she received a

verbal warning from Epstein to discontinue research in inclusive pedagogy if Metzger wanted to achieve tenure. This was alarming and surprising to Metzger as this research was well-supported by the former Dean Fontaine, the Associate Dean for Inclusion and Diversity, Kools, and the Center for Teaching Excellence at UVA. Further, it was in line with priorities at the SON, UVA, and the AACN (American Association of Colleges of Nursing).

38.     After this threat from Epstein, Metzger met with Kools to discuss Metzger's research into inclusive pedagogy and to report Epstein's issuing Metzger a verbal warning that Metzger needed to discontinue her research in inclusive pedagogy if Metzger wanted to achieve tenure, and Kools confirmed that Metzger's work studying historically underrepresented groups and nursing students who were in racial and ethnic minorities was discussed in Dean's Council meetings and was not well-received by a few key faculty. Kools then advised Metzger to discontinue this type of research if Metzger wanted to succeed at UVA.

39.     Several faculty members disagreed with this decision and were outraged that Metzger was forced out of this extremely valuable work. One faculty member wrote in a letter to Acquaviva, APT chair, and said the following:

> "Her [Metzger] integration of research, teaching, and practice scholarship is a model for holistic scholarship in nursing. Her systematic research on belongingness in the learning environment across diverse student populations has begun to build evidence that feelings of inclusion contribute to the development of professionalism, resilience, and cultural humility in nurses and that, in turn, has potential to contribute to improvements in the delivery of nursing care. In a profession that grapples with high levels of nurses' dissatisfaction, burnout, and the need for cultural competence, it is essential that we study our ways of preparing future nurses so that they are positive change agents in improving

health and reducing health inequities. Metzger is developing as a thought leader in inclusive teaching pedagogy which will reflect positively on both the School of Nursing and UVA as we sustain our commitment to diversity, equity, and inclusion."

40.     On April 26, 2021, Metzger had a faculty evaluation meeting with Cathy Campbell ("Dr. Campbell"), Chair of Acute and Specialty Care Department. Dr. Campbell replaced Epstein as Metzger's Department Chair.

41.     Metzger was surprised by her rating of "partially meets" for service, expressed disagreement, and Metzger asked if she were being undermined as Metzger was preparing to submit her tenure packet. The stated criterion for Metzger's service in this meeting was inconsistent with requirements for tenure and promotion to associate professors for younger professors. Campbell claimed that Metzger was rated as partially meets because Metzger did not have any service with an organization at the national level, but UVA did not require this for tenure and promotion at the SON for other younger similarly situated employees.

42.     UVA is contractually obligated to hold all professors being evaluated for tenure to the same standards. Dr. Campbell did not respond directly to this question. Instead, Campbell advised Metzger to consult with Alhusen, the Associate Dean for Research, and to craft a very strong personal statement for the tenure packet.

43.     Metzger had multiple meetings and email exchanges with Alhusen to express concern that Metzger was being undermined prior to submitting her tenure packet. Alhusen reassured Metzger that this was not the case, and asked Metzger if she would be interested in discussing switching from a tenure track position to a general track position, with Dean Cipriano.

44.     Metzger clearly articulated verbally and via email, that Metzger was not interested in a general track position, and fully intended to submit a strong tenure packet. Metzger reached

out to Kools, Acquaviva, Mi-Kyung Song, and several colleagues, all of whom agreed that this was highly irregular conduct from UVA leadership, as it contradicted their policies forbidding professors from switching employment tracks. These colleagues and mentors expressed concern that the UVA SON leadership, specifically Alhusen and Cipriano, may be attempting to force Metzger to resign.

46. Metzger subsequently learned that Alhusen had already discussed switching Metzger to a general track position with Cipriano.

46. On or around April 28, 2021, Metzger met via telephone with Acquaviva. Acquaviva helped Metzger to assemble Metzger's tenure packet, sent Metzger examples on how to format her packet, advised her on information to include, and expressed strong support for Metzger. Acquaviva's role as APT Chair was to ensure that the tenure review process went smoothly, and was conducted in accordance with the policies and procedures established by the SON. In this role, Acquaviva expressed overall support for Metzger receiving tenure.

47. Kools and Dr. Pat Hollen informed Metzger that Metzger had a strong tenure packet, and that based on their extensive experience they believed that it met or exceeded the requirements for tenure. Kools and Hollen were asked by Metzger to review her packet before submission, as they both had extensive experience in the process and had previously served on the APT committee.

48. On or around April 30, 2021, Metzger earned the 2021 All-University Teaching Award. To Metzger's knowledge, she is the only SON tenured-track faculty member since July of 2015 that has been awarded two teaching excellence awards prior to submitting her tenure packet. It is highly unusual for a tenure-track faculty member to achieve this level of success in teaching while still exceeding their research goals as Metzger did.

49.     On or around July 15, 2021, Metzger submitted her tenure packet, and her tenure packet met and exceeded the criteria for promotion to tenure at the UVA SON. Metzger subsequently learned that the APT Committee, led by Acquaviva, sent a letter to Cipriano on or around December 1, 2021, recommending a negative tenure decision.

50.     In the December 1, 2021 APT Committee letter, SON Leadership, specifically, Alhusen, Epstein and Campbell demeaned Metzger and her work by providing inaccurate portrayals of Metzger's scholarship, research, and service, and portraying Metzger as an emotional, older woman. The APT committee was derelict in their duty by not conducting an independent review of Metzger's tenure packet with regard to the explicit criteria for tenure. Acquaviva, as Chair of APT was charged with ensuring that the process is fair and in line with policies. Aquaviva not only failed to do this, but she also colluded with Dean Cipriano in subverting the process.

51.     In the December 1, 2021 APT Committee Letter, Voter 3 demeaned Metzger's ability to produce enough scholarship in her area of scholarship, establish a national reputation, and take a lead role when Voter 3 emphasized Metzger's passion and portrayed her as without self-control. Voter 3 said, "as is clear from her teaching evaluations and her personal statement, she is passionate about teaching and essentially can't help herself from diving into scholarship in this area."

52.     Despite Metzger's publication history being revered as well-rounded, holistic, and contributing to a highly significant priority area for UVA and SON, Voter 3 characterized Metzger as lacking focus in her scholarship.

53.     The December 2021 APT Letter mischaracterized Metzger as lacking productivity and consistency by inaccurately representing Metzger's number of presentations at conferences,

minimizing the effort it took to modify interventions from in-person to remote during the COVID-19 pandemic, and inaccurately describing Metzger's publications as not related to her research.

54.     The December 2021 APT Letter mischaracterized Metzger's scholarship as lacking rigor by inaccurately describing Metzger's rigorously-conducted research projects (one scoping study, one mixed methods study, and one qualitative descriptive study with the entire 4th year cohort) as "educational projects." These studies were consistent with priorities set by the Dean of the SON and UVA writ large and received national attention.

55.     The December 2021 APT Letter mischaracterized Metzger's scholarship as lacking rigor when it described her work as site PI on a NIH externally-funded grant as "leading recruitment and study enrollment procedures" when in fact her role was much more prestigious and involved.

56.     The December 2021 APT Letter improperly minimized and mischaracterized the amount of funding Metzger procured for UVA SON, incorrectly depicting her as having been deficient in her external funding. Metzger's level of external funding exceeded that of many of her peers who had previously been granted tenure.

57.     The December 2021 APT Letter demeaned Metzger by characterizing her as lacking independence, "not consistently [taking] a lead role," and procuring funding primarily by procuring "small internal grants without a clear research focus or is primarily linked to mentors." This demeaning characterization was contrary to the facts in Metzger's CV, support letters, and elsewhere.

58.     The December 1, 2021 APT letter understated Metzger's service despite having access to her CV and personal statement, which outlined her leadership in SON committees and

at UVA as a whole.

59.     Metzger received no indication of the committee's recommendation and Dean's decision until February 15, 2022, during a meeting with Dean Cipriano.

60.     On or around February 15, 2022, Metzger met with Cipriano, and Cipriano informed Metzger that UVA was denying Metzger's tenure and would instead offer Metzger a time sensitive position as a general track professor. Cipriano's offer was contingent on Metzger resigning from her current tenure-track position and foregoing her appeal of her tenure decision. Cipriano then told Metzger that a three-year contract on the general track would "likely get [Metzger] close to retirement age anyway."

61.     \When queried as to what criteria Metzger did not meet that resulted in a negative tenure decision, Cipriano admitted Cipriano could not answer the question as she is not an academic. Cipriano recommended Metzger to reach out to Acquaviva for the specific criteria not met. Cipriano further stated that her "hands were tied" as the APT recommended a denial of tenure. This is false.

62.     Metzger requested to know the specific reasons why Metzger was being denied tenure and promotion, and the specific criteria that she did not meet to multiple superiors (e.g., Acquaviva, Alhusen, Campbell) afterwards. To this day, Metzger still has not been informed of the specific criteria she did not meet that resulted in a negative tenure decision. Instead, she was consistently encouraged, by all her superiors, to accept UVA's "generous offer" of a general teaching track position. Metzger was strongly advised not to move forward with an appeal of her tenure decision and was forbidden from discussing this denial with anyone.

63.     On or around February 16, 2022, Metzger received an email from Cipriano, officially denying Metzger tenure. Vital information regarding Metzger appeal of this decision

12

was withheld from Metzger, including the overview of her appeal rights, and the breakdown of her tenure criteria. It was only after Metzger pressed for this information, that it was received.

64.     On or around March 15, 2022, Metzger submitted a tenure appeal to Ian Baucom ("Baucom"), UVA's Provost. The appeal highlighted multiple procedural and process violations, anomalies in Metzger's tenure denial, evidence of age discrimination and retaliation, and equity issues.

65.     On or around May 13, 2022, Metzger received notification that UVA denied Metzger's appeal even though UVA is obligated by its own operating procedures and protocols to hold all professors being evaluated for tenure to the same standard.

66.     Upon information and belief, for the past 20 years no assistant professor who submitted their tenure packet at the SON have ultimately had their tenure denied.

67.     Beginning in 2015 up to the present, Williams, Randy Jones ("Jones"), Alhusen, Jessica Malpass ("Malpass"), Jeongok Logan ("Logan"), Emma Mitchell ("Mitchell"), Pam DeGuzman ("DeGuzman"), Virginia LaBaron ("LaBaron"), and Katrina Debnam ("Debnam") have all submitted their tenure packets and all were granted tenure.

68.     Williams, Jones, Alhusen, Malpass, Logan, Mitchell, DeGuzman, LaBaron, and Debnam are all *at least* 10 years younger than Metzger, and the average age of a professor granted tenure in the United States is 39 years old.

69.     Cipriano, Epstein, Acquaviva, Campbell, and Alhusen denied Metzger tenure because they believe that Metzger is close to retirement age and would not have an extended funding runway for research in the future should Metzger obtain tenure with UVA SON.

70.     By Cipriano, Epstein, Acquaviva, Campbell, and Alhusen coordinating to undermine UVA's tenure decision on Metzger's tenure packet, Cipriano, Epstein, Acquaviva,

13

Campbell, and Alhusen acted as UVA's agents and retaliated against Metzger for Metzger's research into inclusive pedagogy, highlighting students from racial and ethnic minorities.

71.     The denial of Metzger's tenure has resulted in her being unable to obtain a position at any other major research university. Metzger is further not eligible for a clinical position without substantial and expensive re-education and training. This effectively has ended Metzger's research career.

72.     Despite this negative tenure decision and retaliatory behavior, Metzger continued to mentor students, execute all funded projects, and disseminate findings as consistent with expectations of tenure-track faculty.

73.     Throughout this process, Campbell, Acquaviva, and Cipriano all engaged in a coordinated effort to convince Metzger to resign her position and forego any tenure appeal.

74.     Metzger was repeatedly instructed not to ask any questions of the APT committee or SON leadership about her tenure and promotion denial.

75.     Once Metzger shared that she was appealing her tenure and promotion decision and complaining about age discrimination, SON leadership began engaging in a series of retaliatory behaviors, including withholding summer salary, suddenly reassigning Metzger's advisees without notice, disbanding her research team by freezing her funds, encouraging faculty colleagues not to speak with her, using all of her material (including recorded lectures featuring her image and voice) in other classes, and forcing Dr. Metzger to step down from her role as dissertation chair for a PhD candidate.

76.     Metzger participated in her terminal year as outlined by UVA policy, that ended May 24, 2023. This year is created for faculty denied tenure to finish funded research projects, and to grant them an opportunity to find new employment. However, this terminal year has

proven that UVA has effectively ended Metzger's research career. Metzger has been unable to find new employment, her reputational harm is apparent, and Metzger has been forced to go back to school to focus on another career field entirely.

77.     Instead of allowing Metzger the contractually binding parameters of her terminal year, UVA attempted to force Metzger to teach a heavy course load, to the detriment of her research. Metzger explained that this was not consistent with UVA policy, and that she is obligated to finish her funded projects. Cipriano responded with threats to deprive Metzger of her final year of salary.

78.     Metzger's superiors at UVA have continuously and consistently made it clear that they think less of Metzger because of her age, her simultaneous devotion to mentoring and research, and her engagement in both clinical and inclusive pedagogical research which benefits minority students of different races. Several formal leaders and higher-ranking colleagues, including Cipriano, Alhusen, Campbell, and Acquaviva, repeatedly pressured Metzger into resigning her tenure-track position, foregoing the appeal process and applying for a general track position.

79.     As a result of these discriminatory and retaliatory actions, Metzger has sustained economic damages and mental anguish, and she will continue to sustain damages into the foreseeable future.

80.     Metzger had a contract with UVA which UVA has breached causing Metzger to suffer damages as a result of UVA's breach.

**COUNT I**
**Age Discrimination in Violation of the**
**Age Discrimination in Employment Act**
**29 U.S.C. § 621 *et seq.***

81.     Metzger incorporates and realleges all the allegations in the foregoing paragraphs as if fully set forth herein.

82.     Metzger is an "employee" as defined in  29 U.S.C. § 630(f).

83.     UVA is an "employer" as defined in 29 U.S.C. § 630(b).

84.     Metzger is 61 years old and a member of a protected class under the ADEA.

85.     UVA violated 29 U.S.C. § 621 *et seq.* by denying Metzger tenure and by terminating Metzger because of her age.

86.     UVA discriminated against Metzger because of her age when it denied her tenure.

87.     UVA treated younger employees more favorably by granting them tenure, despite Metzger being more qualified than younger employees who were granted tenure.

88.     UVA's stated and forthcoming reasons for denying Metzger tenure and terminating her employment are false and are pretext for unlawful discrimination.

89.     Metzger has suffered substantial economic, reputational harm and mental anguish damages as a result of UVA's unlawful actions, and she will continue to sustain damages into the future.

90.     For UVA's unlawful discrimination against Metzger, she is entitled to such legal or equitable relief as will effectuate the purposes of the ADEA, including, but not limited to, reinstatement, compensatory damages, damages for humiliation and embarrassment, front and back pay, interest on all damages, consequential damages, reasonable attorneys fees and costs, any other relief that furthers the purpose of the ADEA.

<u>COUNT II</u>
**Gender and Age Intersectionality Discrimination in Violation of the
Title VII of the Civil Rights Act of 1964,
42  U.S.C. § 2000e, *et seq.***

91.     Metzger incorporates and realleges all the allegations in the foregoing paragraphs
as if fully set forth herein.

92.     At all relevant times herein, 42 U.S.C. § 2000e, *et seq*., was in full force and
effect.

93.     Metzger is an "employee" as defined in 42 U.S.C. § 2000e(f).

94.     UVA is an "employer" as defined in 42 U.S.C. § 2000e(b).

95.     Metzger is 61 year old female and a member of a protected class under the Title
VII.

96.     UVA violated Title VII by denying Metzger tenure and by terminating Metzger
because of her being an "older emotional woman." The stated reasons for her tenure denial are
based on these subjective and discriminatory factors, instead of UVA standards, and are
prohibited under Title VII.

97.     UVA discriminated against Metzger because of her gender and age, combined.

98.     UVA treated other younger employees more favorably by granting them tenure,
and allowing them to pursue their research endeavors without gender and age being a factor in
their research evaluations.

99.     UVA's stated and forthcoming reasons for denying Metzger tenure and
terminating her employment are false and are pretext for unlawful discrimination.

100.    Metzger has suffered substantial economic and mental anguish damages as a
result of UVA's unlawful actions, and she will continue to sustain damages into the future.

101.    For UVA's unlawful discrimination against Metzger, she is entitled to such legal

or equitable relief as will effectuate the purposes of Title VII including, but not limited to, reinstatement, compensatory damages, damages for humiliation and embarrassment, front and back pay, interest on all damages, reinstatement, consequential damages, reasonable attorneys' fees and costs, any other relief that furthers the purpose of Title VII.

**COUNT III**
**Race Discrimination in Violation of the**
**Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. § 2000e,** *et seq.*

102.     Metzger incorporates and realleges all the allegations in the foregoing paragraphs as if fully set forth herein.

103.     At all relevant times herein, 42 U.S.C. § 2000e, *et seq.*, was in full force and effect.

104.     Metzger is an "employee" as defined in 42 U.S.C. § 2000e(f).

105.     UVA is an "employer" as defined in 42 U.S.C. § 2000e(b).

106.     Metzger is Caucasian and a member of a protected class under Title VII.

107.     UVA violated Title VII by denying Metzger tenure and by terminating Metzger because of her race. Further, they violated Title VII by refusing to allow her to continue her research in inclusive pedagogy, because of her race.

108.     UVA discriminated against Metzger because of her race.

109.     UVA treated other employees more favorably by granting them tenure, and allowing them to pursue their research endeavors without race being a factor in their research evaluations.

110.     UVA's stated and forthcoming reasons for denying Metzger tenure and terminating her employment are false and are pretext for unlawful discrimination.

111.     Metzger has suffered substantial economic and mental anguish damages as a

result of UVA's unlawful actions, and she will continue to sustain damages into the future.

112.    For UVA's unlawful discrimination against Metzger, she is entitled to such legal or equitable relief as will effectuate the purposes of Title VII, including, but not limited to, reinstatement, compensatory damages, damages for humiliation and embarrassment, front and back pay, interest on all damages, consequential damages, reasonable attorneys' fees and costs, any other relief that furthers the purpose of Title VII.

**COUNT IV**
**Retaliation in Violation of the**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e-2, *et seq*.**

113.     Metzger incorporates and realleges all the allegations in the foregoing paragraphs as if fully set forth herein.

114.    At all relevant times herein, 42 U.S.C. § 2000e-2, *et seq.* was in full force and effect.

115.    Metzger is an "employee" as defined in 42 U.S.C. § 2000e(f).

116.    UVA is an "employer" as defined in 42 U.S.C. § 2000e(b).

117.    Metzger engaged in protected activity under Title VII when she conducted research into inclusive pedagogy which benefits and studies students who are racial and ethnic minorities, and when she complained about not being allowed to continue that research.

118.    Metzger further engaged in protected activity when she repeatedly voiced concerns that she was being undermined before submitting her tenure packet.

119.    Metzger further engaged in protected activity when she appealed her tenure denial and complained about discrimination and when she hired counsel experienced in employment law.

120.    UVA retaliated against Metzger for her protected activity when they threatened to

withhold her summer salary, reassigned her advisees without notice, disbanded her research team

by freezing her funds, encouraged faculty colleagues not to speak with her, used all of her

material (including recorded lectures featuring her image and voice) in other classes, and forced

Metzger to step down from her role as dissertation chair for a PhD candidate.

121.    UVA's stated and forthcoming reasons for denying Metzger tenure and

terminating her employment are false and are pretext for unlawful retaliation.

122.    Metzger has suffered substantial economic and mental anguish damages as a

result of UVA's unlawful actions, and she will continue to sustain damages into the future.

123.    For UVA's unlawful retaliation against Metzger, she is entitled to such legal or

equitable relief as will effectuate the purposes of Title VII, including, but not limited to,

reinstatement, compensatory damages, damages for humiliation and embarrassment, front and

back pay, interest on all damages, consequential damages, reasonable attorneys' fees and costs,

any other relief that furthers the purpose of Title VII, and any other relief that this Court deems

just and equitable.

**COUNT V**
**Gender Discrimination**
**Title IX of the Education Amendments of 1972**
**20 U.S.C. § 1681, *et seq.***

124.    Metzger incorporates and realleges all the allegations in the foregoing paragraphs

as if fully set forth herein.

125.    Title IX of the Educational Amendments of 1972 ("Title IX") states, "No person

in the United States shall, on the basis of sex, be excluded from participation in, be denied the

benefits of, or be subjected to discrimination under any education program or activity receiving

Federal financial assistance."  20 U.S.C. § 1681(a).

126.    UVA violated Title IX by subjecting Metzger to discrimination on the basis of her

sex throughout her employment and in her tenure evaluation process; it did so by denying her tenure application despite a showing of credentials that were the same or superior to similarly situated male colleagues who were granted tenure using the same, proper evaluation standards.

127.    Metzger brought these instances of disparate treatment to the attention of her superiors during her tenure application process, but they refused to acknowledge or address the disparate treatment.

128.    UVA's stated reasons for its treatment of Metzger are pretext for its unlawful discrimination.

129.    Metzger sustained substantial monetary and non-monetary damages as the result of UVA's conduct.

**COUNT VI**
**Retaliation**
**Title IX of the Education Amendments of 1972**
**20 .S.C. § 1681, *et seq*.**

130.    Metzger incorporates and realleges all the allegations in the foregoing paragraphs as if fully set forth herein.

131.    UVA violated Title IX by retaliating against Metzger for engaging in protected activity on the basis of her sex throughout her employment and in her tenure evaluation process; it did so by denying her tenure application despite a showing of credentials that were the same or superior to similarly situated male colleagues who were granted tenure using the same, proper evaluation standards.

132.    Metzger brought these instances of disparate treatment to the attention of her superiors during her tenure application process, but they refused to acknowledge or address the disparate treatment.

133.    Metzger engaged in protected activity under Title IX when she conducted

research into inclusive pedagogy which benefits and studies students who are racial and ethnic minorities, and when she complained about not being allowed to continue that research.

134.    Metzger further engaged in protected activity when she repeatedly voiced concerns that she was being undermined before submitting her tenure packet.

135.    Metzger further engaged in protected activity when she appealed her tenure denial and complained about discrimination and when she hired counsel experienced in employment law.

136.    UVA retaliated against Metzger for her protected activity when they threatened to withhold her summer salary, reassigned her advisees without notice, disbanded her research team by freezing her funds, encouraged faculty colleagues not to speak with her, used all of her material (including recorded lectures featuring her image and voice) in other classes, and forced Metzger to step down from her role as dissertation chair for a PhD candidate.

137.    During the promotion and tenure denial appeals process, Metzger engaged in additional protected activities when she complained to multiple University administrators about the sex-based disparate treatment she received in the evaluation of her promotion and tenure application.

138.    UVA again took materially adverse actions against Metzger when UVA denied Metzger's tenure appeal without any analysis or explanation.

139.    UVA'S decision to deny Metzger tenure despite her qualifications was caused by Metzger's protected activities in complaining about UVA's disparate treatment of her tenure application because of her sex.

## COUNT VII
### Virginia Common Law
### Breach of Contract
### Va. Code Ann. § 59.1-507.1

140.    Metzger incorporates and realleges all the allegations in the foregoing paragraphs as if fully set forth herein.

141.    At all relevant times herein, Va. Code Ann. § 59.1-507.1 *et seq.* was in full force and effect.

142.    UVA hired Metzger as a tenure-track faculty member, and as a Roberts Scholar. The Roberts Scholar agreement is an enforceable contract.

143.    Being a Roberts Scholar meant that Metzger was supposed to have a reduced teaching and service requirement, allowing Metzger to dedicate time for research.

144.    Despite Metzger's Roberts Scholar designation, UVA's SON assigned Metzger a heavy teaching load starting early on in her employment with UVA. Metzger had never taught a course prior to 2016, but the UVA SON obligated her to develop a new full cohort course, with both clinical and didactic components, in a new curriculum.

145.    On or around March 19, 2018, Metzger signed a renewed contract with UVA.

146.    The agreement that Metzger signed with UVA created an enforceable contract.

147.    UVA contracted and promised to adhere to its policies for promotion and tenure.

148.    Despite being bound by their policies, UVA attempted to persuade Metzger away from the Tenure and Promotion Track, and into a general track position. Switching employment tracks is against the SON's policy. When Metzger asked for the offer of a general teaching position in writing, Dean Cipriano panicked, and explained that Metzger would have to resign her current position first, and then apply for an open general track position.

149.    It is further expected that all tenure packets will be reviewed fairly, according to

the criteria clearly stated in UVA's Tenure and Promotion policies and procedures. Under those policies and procedures, all faculty will be evaluated based on the merits of their contributions and the degree to which they met the goals established at their mid-tenure review. They will not be judged based on characteristics such as age, race, gender, or lack of faculty interest in their research.

150.     It is also expected, based on UVA's Tenure and Promotion policies and procedures that faculty will be made aware of the rationale for their tenure denial, including the specific criteria that were not met. Metzger to this day, is not aware of the specific criteria that she allegedly did not meet in order to achieve tenure and promotion.

151.     It is further expected, based on UVA's Tenure and Promotion policies and procedures, that employees who are denied tenure will be informed about their right to appeal a negative tenure decision. Metzger was not informed of her right to appeal her tenure decision, and instead had to decipher that she had this right to appeal on her own.

152.     By failing to adhere to the policies regarding the standards for tenure and promotion evaluation, UVA breached its contract with Metzger.

153.     Metzger has suffered substantial economic damages as a result of UVA's breach of contract, and she will continue to sustain other consequential damages into the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dr. Maureen Metzger respectfully requests that the Court enter judgment in her favor and award to her the following relief.

    A.    Judgment against Defendant UVA in the amount of economic damages, compensatory damages, liquidated damages, and punitive damages to be determined at trial;

B.    Pre-judgment interest;

C.    Employment, reinstatement, promotion, or other equitable relief;

D.    Economic damages including front and back pay;

E.    Compensatory damages;

F.    Interest due on unpaid wages;

G.    Declaratory and injunctive relief;

H.    A reasonable attorneys' fee and the costs of this action; and

I.    Any other relief this Honorable Court deems just and proper to award.


                        MAUREEN METZGER
                        By Counsel


                        ***/S/ Adam Augustine Carter***
                        R. Scott Oswald
                        Adam Augustine Carter
                        The Employment Law Group, P.C.
                        1717 K Street NW, Suite 1110
                        Washington, D.C. 20006
                        (202) 261-2803 (telephone)
                        (202) 261-2835 (facsimile)
                        soswald@employmentlawgroup.com
                        acarter@employmentlawgroup.com
                        *Counsel for Plaintiff*