CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
October 01, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **MAUREEN METZGER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 3:23-cv-58** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE RECTOR AND VISITORS OF THE** | ) | **By: Hon. Robert S. Ballou** |
| **UNIVERSITY OF VIRGINIA,** | ) | |
| | ) | **United States District Judge** |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Dr. Maureen Metzger brings suit against the Rector and Visitors of the University of Virginia ("UVA") alleging discrimination based on age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), discrimination based on sex plus age (intersectional), and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), retaliation for protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), gender discrimination in violation of Title IX, 20 U.S.C. § 1681(a) ("Title IX"), retaliation for protected activity in violation of Title IX, 20 U.S.C. § 1681(a) ("Title IX"); and a common law claim for breach of contract—all flowing from UVA's decision to deny her tenure.

This case is before the Court on UVA's Motion to Dismiss Counts I, II, III, V, and VII of the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, UVA's Motion to Dismiss (Dkt. 4) is **GRANTED**.

### I.      Standard of Review

#### a.   12(b)(1) Motion to Dismiss

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89 (1938). Therefore, the burden of establishing the existence of subject-matter jurisdiction rests upon the party which seeks to invoke the court's authority. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied,* 503 U.S. 984 (1992).

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss an action for lack of subject-matter jurisdiction. In deciding a motion made pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must ascertain whether "plaintiff's allegations standing alone and taken as true plead jurisdiction and a meritorious cause of action." *Allianz Insurance Co. of Canada v. Cho Yang Shipping Co., Ltd.,* 131 F. Supp. 2d 787, 789 (E.D. Va. 2000) (quoting *Dickey v. Greene,* 729 F.2d 957, 958 (4th Cir. 1984)).

 "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. "A Rule 12(b)(1) motion to dismiss should be granted 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Zeigler v. Eastman Chemical Co.*, 54 F.4th 187, 194 (4th Cir. 2022) (quoting *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999)).

### b. 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[a] complaint must

contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). I accept all factual allegations in the complaint as true and draw all reasonable inferences in Metzger's favor as the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). However, legal conclusions are not entitled to the same presumption of truth. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (noting that while detailed factual allegations are not required, a plaintiff must still provide more than labels, conclusions, or a "formulaic recitation of the elements of a cause of action").

## II.    Background

The UVA School of Nursing hired Metzger as a Roberts Scholar in July 2015. She was a term or non-tenured professor with a three-year contract subject to renewal for a second term during which she could apply for tenure. Metzger is a sixty-one-year-old Caucasian woman. She had considerable nursing experience before joining the UVA faculty. She became a licensed Registered Nurse in 1985 and spent the following twenty years as a practicing nurse. In 2005, she returned to school at the University of Rochester, where she obtained her M.S. in Nursing in 2007 and her Ph.D. in Health Practice Research in 2012. In 2013, Metzger accepted a post-doctoral position at the University of North Carolina funded through a prestigious T32 grant provided by the National Institutes of Health.

Metzger alleges that, as a Roberts Scholar, she was "supposed to have a reduced teaching and service requirement, allowing [her] to dedicate time for [her] research," which focused on palliative care and inclusive pedagogy. Despite the reduced teaching and service requirement,

3

Metzger claims she was given a heavy teaching load—far greater than the teaching load assigned to her younger tenure-tracked peers at UVA. Metzger raised her concerns about the teaching load with her superiors at UVA, but no changes were made.

Metzger had a mid-tenure review in March 2018 where mutual goals were established, and her contract was renewed for another three years. In April 2020, Metzger received her Annual Faculty Evaluation for the 2019 calendar year. The review showed that she met her goals for 2019 but noted areas for improvement. Her reviewer verbally warned Metzger that she should focus her research exclusively on palliative care and discontinue research in inclusive pedagogy if she wanted to achieve tenure.

The 2020 Annual Faculty Evaluation reflected that Metzger received a "partially meets" rating for service—one of the three categories assessed at UVA when considering a candidate for tenure.[1] The reviewer noted Metzger lacked service with an organization at the national level. Metzger alleges that UVA did not require other similarly situated younger tenure-track professors to have service with a national organization. During her review, Metzger expressed disagreement with her "partially meets" rating and purportedly "asked if she were being undermined as [she] was preparing to submit her tenure [application]" Subsequently, Metzger had multiple meetings and email exchanges with Alhusen, Associate Dean for Research, in which she reiterated her concern that "she was being undermined prior to submitting her tenure packet. Alhusen asked Metzger if she had any interest in switching from a tenure-track position to a general-track position, but Metzger declined and indicated that she intended to submit a tenure application.

Metzger collaborated with the Advancement, Promotion and Tenure Committee ("APT")

---

[1] The three categories are: (1) teaching; (2) scholarship; and (3) service. Dkt 1 at ¶ 26.

chairperson at the School of Nursing in preparing her tenure application. She claims that colleagues and superiors told her she had a strong tenure packet, and they expected her to be awarded tenure. Metzger submitted her tenure application in July of 2021, and in December 2021, the APT committee wrote the Dean of the School of Nursing recommending against awarding her tenure. The committee noted that Metzger had an excellent teaching record but that her performance in the areas of scholarship and service were insufficient. Metzger learned of the APT committee's decision in February 2022, when she met with the Dean of the School of Nursing. At that time, the dean offered her a general-track position contingent upon Metzger foregoing an appeal of the decision to deny her tenure, stating the general-track position would "likely get [Metzger] close to retirement age anyway." Metzger declined the general-track teaching position and appealed the tenure decision in March 2022. Her appeal was ultimately denied.

Metzger contends that in the past twenty years prior to her unsuccessful tenure application, the School of Nursing had not denied tenure to any assistant professor who submitted a tenure packet. She also names nine individuals whom she asserts were all at least ten years younger than her, and who were granted tenure by the School of Nursing since 2015. Metzger left her employment at UVA in 2023 when her contract expired.

Metzger asserts the following claims in her Complaint:

Count I – Age Discrimination

Count II – Gender and Age Intersectionality Under Title VII

Count III – Race Discrimination Under Title VII

Count IV – Retaliation in Violation of Title VII

Count V – Gender Discrimination under Title IX – 20 U.S.C. § 1681, *et. seq.*

Count VI – Retaliation under Title IX – 20 U.S.C. § 1681, *et. seq.*

Count VII – Virginia Breach of Contract under Va. Code § 59.1-507.1

Defendant moves to dismiss Counts I, II, III, V, and VII of the Complaint.[2]

## III.  Analysis

Federal courts review professorial employment decisions with great trepidation. *Jiminez v. Mary Washington College*, 57 F.3d 369, 376–77 (4th Cir. 1995), *cert. denied* 516 U.S. (1995); *Fields v. Clark Univ.,* 966 F.2d 49, 54 (1st Cir. 1992), *cert. denied,* 506 U.S. 1052 (1993); *Brousard–Norcross v. Augustana College Ass'n,* 935 F.2d 974, 975–76 (8th Cir. 1991); *Zahorik v. Cornell Univ.,* 729 F.2d 85, 92–93 (2d Cir. 1984); *Kunda v. Muhlenberg College,* 621 F.2d 532, 548 (3d Cir. 1980). Courts must be ever vigilant in observing that they do not "sit as a 'super personnel council' to review tenure decisions." *Brousard–Norcross,* 935 F.2d at 976. Courts must always be "cognizant of the fact that professorial appointments necessarily involve 'subjective and scholarly judgments,' with which we have been reluctant to interfere." *Jiminez*, 57 F.3d at 376 (quoting *Smith v. University of North Carolina,* 632 F.2d 316, 345–47 (4th Cir. 1980)). As the Third Circuit cautioned:

> [C]ourts must be vigilant not to intrude into [tenure] determination[s], and should not substitute their judgment for that of the college with respect to the qualifications of faculty members for promotion and tenure. Determinations about such matters as teaching ability, research scholarship, and professional stature are subjective, and unless they can be shown to have been used as the mechanism to obscure discrimination, they must be left for evaluation by the professional, particularly since they often involve inquiry into aspects of arcane scholarship beyond the competence of individual judges.

*Kunda,* 621 F.2d at 548.  Accordingly, whether or not an individual has met the requirements for tenure or is sufficiently qualified for such a promotion is outside the purview of the courts.

---

[2] UVA has filed an answer to Metzger's retaliation claims in Counts IV and VI. Discovery is proceeding on those claims.

Rather, the court's review is limited to determining "whether the appointment or promotion was denied because of a discriminatory reason." *Smith,* 632 F.2d at 346.

It is with these considerations in mind that I turn to the motion before me.

### a.   Count I

"The Eleventh Amendment bars suits in federal court by citizens against unconsenting states and state agencies." *Jemsek v. Rhyne*, 662 F. App'x 206, 210 (4th Cir. 2016) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Eleventh Amendment immunity extends "to state agencies and other government entities properly characterized as arms of the State." *In re South Carolina Dep't of Parks, Recreation and Tourism*, 103 F.4th 287, 291 (4th Cir. 2024) (quoting *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995). Here, UVA, as a public university, is an arm of the Commonwealth of Virginia, and it seeks the same Eleventh Amendment immunity provided to Virginia.

A claim against a state agency such as UVA can overcome sovereign immunity in three ways: (1) Congress has passed a statute expressly abrogating sovereign immunity; (2) a state agency has expressly consented to suit or waived its immunity; or (3) a plaintiff is seeking prospective or injunctive relief under the *Ex parte Young* doctrine. *See Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Ex parte Young*, 209 U.S. 123, 159–60 (1908). "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'" *Edelman*, 415 U.S. at 673 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)).

In Count I of the Complaint, Metzger asserts a claim of age discrimination under the Age

Discrimination Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* UVA contends this claim is precluded by sovereign immunity. Metzger counters that her claim meets the second exception "as the Commonwealth has waived its immunity." Dkt. 11 at 10. She further argues that an amended complaint would meet the third exception. However, I will not rule on a hypothetical amended complaint and consider the Complaint as written—I thus only consider whether the Commonwealth has waived its immunity.[3]

Metzger argues Virginia waived sovereign immunity as to the ADEA through the Virginia Tort Claims Act and by enacting the Virginia Values Act. Neither argument is persuasive. "Only the General Assembly can determine as a matter of policy whether the Commonwealth's sovereign immunity should be abrogated with regard to a particular type of legal action." *Ligon v. Cnty. of Goochland*, 689 S.E.2d 666, 688–69 (Va. 2010) (citing *Afzall v. Commonwealth,* 639 S.E.2d 279, 281 (Va. 2007)); *Commonwealth v. Luzik,* 524 S.E.2d 871, 876 (Va. 2000)). The only way the General Assembly may abrogate sovereign immunity regarding a particular claim is by "an express statutory" provision. *Carter*, 591 S.E.2d at 78. Indeed, "Commonwealth agencies are not bound by statutes of general application '*no matter how comprehensive the language*, unless named expressly or included by necessary implication.'" *Cuccinelli v. Rector, Visitors of the Univ. of Virginia*, 722 S.E.2d 626, 630 (Va. 2012) (quoting *Commonwealth ex rel. Pross v. Bd. of Supervisors of Spotsylvania Cnty.*, 303 S.E.2d 887, 889 (1983)). "A necessary implication is '[a]n implication so strong in its probability that anything to the contrary would be unreasonable.'" *Id.* at 632 (alteration in original) (quoting *Black's Law*

---

[3] The first exception does not apply as Congress did not validly abrogate sovereign immunity with respect to ADEA claims alleged against state agencies. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 82–83 (2000). Metzger, in stating "an amended complaint would meet the third exception, Dkt. 11 at 10, implicitly concedes her complaint does not meet the third exception as currently written.

*Dictionary* 822 (9th ed. 2009)). "[T]here can be no waiver of sovereign immunity by implication." *Hinchey v. Ogden*, 307 S.E.2d, 891, 895 (Va. 1983). This statutory construction rule "has been consistently applied by [the Supreme Court of Virginia] for more than a century." *Cuccinelli*, 722 S.E.2d at 630.

Metzger first points to the Virginia Tort Claims Act as a source for Virginia's waiver of Eleventh Amendment immunity for the ADEA suit. However, the VTCA is unavailing. It lacks the express waiver of immunity required by the Supreme Court of Virginia. Further, the VTCA's limited waiver applies only to claims arising under traditional tort principles. Under the VTCA "if a claimant would have a legitimate cause of action against a private person under traditional tort principles—duty, breach, proximate causation, and damages—then the Commonwealth has waived its immunity for such a claim and may be liable just as a private person would." *Commonwealth v. Muwahhid*, 887 S.E.2d 801, 830 (Va. Ct. App. 2023). Metzger's ADEA claim does not arise under traditional tort principles. Accordingly, the VTCA does not waive sovereign immunity for the ADEA suit.

Metzger next turns to the Virginia Values Act for its source of waiver. The VVA added, among other things, language to the Virginia Personnel Act, Va. Code Ann. § 2.2-2901.1, providing that "no state agency . . . shall discriminate in employment on the basis of . . . age . . .." 2020 Va. Acts ch.1140. Metzger asserts there is no separately articulated enforcement mechanism to enforce this provision, and therefore the Commonwealth waives its sovereign immunity by necessary implication. Dkt. 11 at 11. Metzger's argument is plainly incorrect.

The Virginia Personnel Act provides for enforcement through the Virginia Grievance Procedure. *See* Va. Code Ann. §§ 2.2-3000 *et seq.* The Grievance Procedure, which is followed by UVA, provides for judicial review of any grievance decision by the state circuit court, and a

right to appeal to the Virginia Court of Appeals. "A necessary implication is '[a]n implication so strong in its probability that anything to the contrary would be unreasonable.'" *Cuccinelli*, 722 S.E.2d at 632 (alteration in original) (quoting *Black's Law Dictionary* 822 (9th ed. 2009)). Consequently, if "[t]he language of the Act still functions" absent a waiver of sovereign immunity, then the court cannot hold that the Commonwealth waived immunity by necessary implication. *Id.* Metzger has not shown that the Virginia Personnel Act is nonfunctional  or is unreasonable unless sovereign immunity is waived for a federal ADEA claim.

As the Virginia General Assembly has not waived sovereign immunity for a suit under the ADEA, Count I of the Complaint is dismissed under Rule 12(b)(1).

### b.   Counts II and V: Gender discrimination under Title VII and Title IX

#### i.   Count II

In Count II, Metzger asserts an intersectional claim of gender and age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1). "Intersectionality theory posits that individuals have multiple identities that are not addressed by legal doctrines based solely on a single identity or status." *Id.* at 604 (quoting Dianne Avery *et al.*, Employment Discrimination Law 47 (8th ed. 2010) ("Employment Discrimination Law")). "[S]ome cases present evidence that points to discrimination occurring not only because of the plaintiff's sex, but because of both sex and some other characteristic." *Id.* (quoting Avery *et al.*, Employment Discrimination Law at 352).

"Although the Fourth Circuit has yet to answer [whether plaintiffs may assert intersectional claims under Title VII], '[s]everal courts have been willing to embrace intersectionality theory in Title VII cases.'" *Westmoreland v. Prince George's Cnty.*, 876 F. Supp. 2d 594, 604 (D. Md. 2012) (citing *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 337 n.4 (4th Cir. 2010) and quoting Avery et al., Employment Discrimination Law at 47); *see, e.g.*, *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980) (finding that the district court improperly failed to address the plaintiff's claim of discrimination on the basis of both race and sex); *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1561–62 (9th Cir. 1994) (holding "that, when a plaintiff is claiming race *and* sex bias, it is necessary to determine whether the employer discriminates on the basis of that *combination* of factors" because "bisect[ing] a person's identity at the intersection of race and gender often distorts or ignores the particular nature of their experiences"); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416 (10th Cir. 1987) (finding that aggregating evidence of racial hostility with evidence of sexual hostility is permissible to determine the pervasiveness of the alleged harassment). Additionally, the Supreme Court's decision in *Bostock v. Clayton Cnty.*, suggests plaintiffs may assert discrimination claims under Title VII so long as the discrimination is based, in part, on a protected attribute. *See* 590 U.S. 644, 660–61 (2020) ("An employer violates Title VII when it intentionally fires an individual employee based in part on sex. It doesn't matter if other factors besides the plaintiff's sex contributed to the decision. . . . [I]f changing the employee's sex would have yielded a different choice by the employer—a statutory violation has occurred."). Based on this precedent, I find that Metzger's claim that she was discriminated against because she is a 61-year old woman is independently cognizable under Title VII.[4] *See Frappied v.*

---

[4] Because sex plus age claims are independently cognizable under Title VII and Congress has abrogated state sovereign immunity as to Title VII claims, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976), I find that sovereign

*Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038 (10th Cir. 2020) (recognizing a sex plus age claim under Title VII).

However, while Metzger may assert a cognizable claim, she fails to sufficiently state a claim under Rule 12(b)(6). A plaintiff is not required to plead facts that constitute a *prima facie* case to survive a motion to dismiss, *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)), but her factual allegations must be sufficient "to raise a right to relief above the speculative level[,]" *id.* (quoting *Twombly*, 550 U.S. at 555). To plead a claim for disparate treatment under Title VII, a plaintiff may allege direct evidence of discrimination, or, absent direct evidence of animus, a plaintiff must plead: "(1) [her] membership in a protected class; (2) [her] satisfactory job performance; (3) an adverse employment action; and (4) similarly situated employees outside the protected class who received more favorable treatment." *Tabb v. Bd. of Educ. of Durham Pub. Schs.*, 29 F.4th 148, 157 (4th Cir. 2022), *cert. denied sub nom. Tabb v. Durham Pub. Sch. Bd. of Educ.*, 143 S. Ct. 104 (2022).

Metzger claims she suffered sex-plus-age discrimination. This claim proceeds under Title VII meaning that the ultimate question revolves around the characteristics protected by Title VII. Sex is protected under Title VII, but age is not. Therefore, the question the Court must determine is whether Metzger adequately pledd that UVA discriminated against her *because of her sex*. Metzger must plead more under Title VII than the fact that she is a woman and that she was discriminated against on the basis of age. She must plausibly plead that gender was a but-for cause of her termination was her gender. *See Bostock*, 590 U.S. at 656.

---

immunity does not bar Metzger's intersectional discrimination claim even though it, like an ADEA claim, includes age.

Metzger relies on three allegations to support her claims. None of which are sufficient to support a claim under Title VII. First, Metzger argues that the December 2021 Letter from the APT Committee which recommended denying her tenure application is direct evidence of discrimination. In the letter, one of the anonymous committee members, "Voter 3," wrote, "as is clear from her teaching evaluations and her personal statement, [Metzger] is passionate about teaching and essentially can't help herself from diving into scholarship in this area." *Id.* at ¶ 51. From this, she asks the Court to infer that the letter portrays her as "an emotional, older woman." *Id.* at ¶ 50. But such an inference is unreasonable. *Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002) (noting that the court is not obligated to draw unreasonable inferences in favor of the nonmoving party).  Nothing in Voter 3's statement suggests a gender-based motive for denying her tenure.

Second, Metzger relies upon comments made by the Dean of the School of Nursing when she informed her that her tenure application had been denied. At that time, the Dean offered Metzger a general-track position on the condition that Metzger resign from her current tenure-track position and forego her appeal of the tenure decision. *Id.* at ¶ 60. Metzger alleges the Dean told her, "a three-year contract on the general track would 'likely get [her] close to retirement anyway.'" *Id.* at ¶ 60. While the Dean's comment may suggest age discrimination, it does not implicate Metzger's gender, and therefore, is insufficient to support a claim under Title VII claim. *See* Bostock, 590 U.S. at 656.

Finally, Metzger points to nine purportedly similarly situated individuals who were granted tenure between 2015 and the present. *Id.* at ¶ 67–68. These alleged "comparators" are insufficient to support a Title VII claim. A sex-plus-age plaintiff must show unfavorable treatment relative to an employee of the opposite sex who also shares the "plus" characteristic.

As the Tenth Circuit noted in a similar sex-plus-age case, where the plaintiff is an older woman, "the relevant comparator would be an older man." *Frappied*, 966 F.3d at 1048. Here, Metzger has not identified the alleged comparators' genders, and she specifically notes that all nine individuals are at least ten years younger than her.[5] Accordingly, Metzger has not identified an appropriate comparator, and the nine listed individuals are irrelevant to her claim under Title VII.

Pleading requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice to survive a motion to dismiss for failure to state a claim. *Twombly*, 550 U.S. at 555. As Metzger has failed to provide sufficient factual matter to "state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570), Count II must be dismissed.

### ii.   Count V

In Count V, Metzger asserts a claim of gender discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* Courts in the Fourth Circuit generally evaluate Title IX employment discrimination claims under the same analysis as Title VII. *Reid v. James Madison Univ.*, 90 F.4th 311, 319 (4th Cir. 2024) (citing *Preston v. Comm. Ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 (4th Cir. 1994)). Accordingly, the analysis for Metzger's claim in Count V is nearly identical to the analysis of her Title VII claim in Count II supra. The one difference is that rather than examining the intersection of age and gender as was done for Count II, the analysis here focuses solely on gender.

---

[5] While the Fourth Circuit has stated that "evidentiary determinations regarding whether [] comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made at [the motion to dismiss stage]," *Woods v. City of Greensboro*, 855 F.3d 639, 650 (4th Cir. 2017), Metzger provides no comparators, only a name and the fact that each person is at least ten years younger than her.

In support of her claim, Metzger pleads two facts: (1) the December letter from APT Committee recommending a denial of tenure portrays her as an emotional, older woman; and (2) she was treated less favorably than a similarly situated male. Metzger pleads a number of other allegations and conclusions, but each is conclusory or a legal conclusion and need not be accepted as true by the Court. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *see* Dkt. 1 at ¶¶ 52–58, 126–28.

As stated above, I will not make the unreasonable inference that the APT Committee letter portrays Metzger as an emotional, older woman based solely on the statement, "as is clear from her teaching evaluations and her personal statement, [Metzger] is passionate about teaching and essentially can't help herself from diving into scholarship in this area." Consequently, Metzger's Title IX allegation rests on the only other non-conclusory fact she pleads—her treatment in comparison to a similarly situated comparator.

Metzger alleges UVA violated Title IX "by denying her tenure application despite a showing of credentials that were the same or superior to similarly situated male colleagues who were granted tenure using the same, proper evaluation standards." Dkt. 1 at ¶ 126. But Metzger does not identify the specific "similar situated male colleagues." To be sure, the Complaint includes a list of individuals who were granted tenure from 2015 until the present, but the Court cannot determine the gender of these individuals based on their names alone. Thus, it is unclear whether Metzger has adequately alleged that she was treated differently than similarly situated male colleagues.

Moreover, even if I accept that Metzger has adequately alleged a male comparator, and that merely stating a comparator's  name is sufficient to survive a 12(b)(6) motion, a plaintiff must do more than "plead[] facts that are 'merely consistent with' a defendant's liability;" the

facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). While Metzger has alleged that UVA failed to grant her tenure, she has not alleged facts sufficient to to show it failed to grant her tenure because of her sex. Metzger's complaint leaves open to speculation the cause for UVA's decision to deny her tenure application, and the cause she asks the Court to infer—invidious discrimination on the basis of sex—is not plausible in light of the "obvious alternative explanation" that the decisionmakers merely judged Metzger's scholarship and service to be lacking and not to the standard of a tenured professor. *Id.* at 682 (quoting *Twombly*, 550 U.S. at 567). Indeed, as the Fourth Circuit noted in *McCleary-Evans v. Maryland Dept. of Trans., State Highway Admin.*, "the consequence of allowing [plaintiff's] claim to proceed on her complaint as stated would be that any qualified member of a protected class who alleges nothing more than that she was denied a position or promotion in favor of someone outside her protected class would be able to survive" a motion to dismiss. 780 F.3d 582, 588 (4th Cir. 2015). Such a result would clearly run contrary to the Supreme Court's command that a complaint must allege, "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678. Accordingly, Count V must be dismissed.

### c. Count III

In Count III, Metzger asserts a race discrimination claim under Title VII. Specifically, she alleges UVA discriminated against her by denying her tenure because she is white. Metzger further contends UVA discriminated against her by refusing to allow her to pursue her research in inclusive pedagogy. Metzger's pleadings in support of these claims are so thin as to nearly be transparent.

Metzger first argues that she has alleged a similarly situated comparator and that she was

16

treated differently than that comparator, *i.e.*, they were granted tenure when she was not. "UVA treated other employees more favorably by granting them tenure and allowing them to pursue their research endeavors without race being a factor in their research evaluations." Dkt. 1 at ¶ 109. Metzger points to the same list of nine individuals she utilized as the comparators for her Title VII sex and age intersectionality claim and her Title IX gender discrimination claim. *See id.* at ¶¶ 67–68. Metzger pleads no further facts to connect any of these nine individuals to the "other employees" she alleges were treated more favorably than she was. *See* Dkt.1.

Metzger argues it is irrelevant that she failed to identify the specific race of any of the individuals she asserts are comparators because UVA had knowledge of their race and was thus given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Dkt. 11 at 19 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 337 (2005)). This, however, is not the pleading standard. Rather, the pleadings must provide sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Merely stating other employees were treated differently than Metzger, and she was denied tenure because of her race is insufficient to permit an inference as to the race of the unidentified comparators. *See Brown v. Univ. of N. Carolina at Chapel Hill*, No. 1:22cv717, 2023 WL 6958987, at *15 n.12 (M.D.N.C. Oct. 20, 2023).

Metzger further alleges that her denial of tenure was not the only adverse discriminatory action taken against her by UVA on account of her race. She alleges UVA discriminated against her by refusing to allow her to research inclusive pedagogy. Dkt. 11 at 20. Metzger provides no further factual basis for her allegation within the Complaint. In her brief in opposition to the Motion to Dismiss, she only argues her allegation is "largely identical to the allegations made in

*Brown* [*v. Univ. of N. Carolina at Chapel Hill*]," and thus, "UVA's refusal to allow her research alone is sufficient to survive UVA's motion to dismiss." *Id.*

First, the court in *Brown* actually upheld the plaintiff's Title VI claims, and dismissed the plaintiff's Title VII claim when it found the facts alleged in the complaint failed to sufficiently support and adverse employment action. *Brown*, 2023 WL 6958987, at *9–11, 13–15. As Metzger does not bring a Title VI claim, this case does little to advance her Title VII claim of race discrimination. Furthermore, she does not actually allege that her research into inclusive pedagogy was prevented. Rather, Metzger alleges she was warned that such research was not well received by faculty, and she should discontinue the research if she wanted to achieve tenure. Dkt. 1 at ¶ 38. It also appears from the Complaint that Metzger did not, in fact, discontinue her research into inclusive pedagogy. As the APT Committee letter noted, Metzger loved teaching so much, she couldn't help herself from diving into scholarship in that area. *Id.* at ¶ 51.

Metzger's complaint provides a dearth of factual allegations in support of her Title VI race discrimination claim. The Complaint is plainly insufficient to move Metzger's claim from the realm of possibility to the realm of plausibility, as required by *Twombly* and *Iqbal*. Accordingly, Count III must be dismissed.

### d.  Count VII

Finally, Metzger asserts a breach of contract claim under Virginia law. She largely repackages her discrimination claims, arguing UVA violated various contractual obligations before she applied for tenure, when evaluating her tenure application, and after it rendered its decision on her tenure application.

Under Virginia law, a cause of action for breach of contract has three elements: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach

18

of that obligation; and (3) injury or damage to the plaintiff caused by the breach." *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)).

Metzger originally entered a three-year employment contract with UVA in 2015 as a tenure-track faculty member and Roberts Scholar in the School of Nursing. She then signed a renewed contract in 2018 for an additional three-year term. Metzger alleges these agreements are one single contract, where the contract signed in 2018 was merely an agreed extension of the original contract, and the Roberts Scholar agreement was incorporated into the employment contract. UVA contends there are two separate contracts between UVA and Metzger, the first three-year contract signed in 2015 and the second signed in 2018. UVA further argues the Roberts Scholar agreement was not an enforceable contract. It also asserts that, as separate contracts, any claims arising under the 2015 contract or the Roberts Scholar agreement are barred by the statute of limitations set out in Va. Code Ann. § 8.01-246, which provides that actions founded upon a written and signed contract must be brought within five years after the cause of action has accrued. Va. Code Ann. § 8.01-246(2). At the motion to dismiss stage, a plaintiff need only plausibly allege the elements of a claim to survive a 12(b)(6) motion. *See Daily v. White*, 520 F. Supp. 3d 835, 842–45 (W.D. Va. 2021).

"[A] motion to dismiss . . . generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). A court may reach such issues only when "all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Id.* (internal quotation marks, citations, and emphasis omitted). The defendant "has the burden of proving that he is entitled to the bar of the statute of limitations." *Brown v. Harms*, 467 S.E.2d 805, 807 (Va. 1996) (citing *Lo v. Burke*, 455 S.E.2d 9, 12 (Va. 1995)).

Under Virginia law, a plaintiff must bring a breach of contract claim on a written contract signed by the party to be charged within five years after the cause of action accrues. Va. Code § 8.01-264(2). Metzger asserts two breaches of the Roberts Scholar agreement. First, she asserts the Roberts Scholar agreement created a contractual obligation that she receive a reduced teaching load and service requirement. Dkt. 1 at ¶ 142–44. Metzger specifically pleads that the increased course load UVA gave her began in 2016. *Id.* at ¶ 28.[6] Under Virginia law a cause of action for breach of contract accrues and the five-year limitation period commences to run from the date of the alleged breach. *Handback v. DRHI, Inc.* 94 F. Supp. 3d 753, 759 (E.D. Va. 2015). If an increased teaching load constitutes a contractual breach of the Roberts Scholar agreement as Metzger alleges, her claim accrued in 2016, and any claim must have been brought by 2021. As it was not, this claim is barred by Va. Code Ann. § 8.01-246.

Metzger contends UVA also breached the Roberts Scholar agreement by holding her to a higher standard for "service" when reviewing her tenure application than the reduced service requirement in the Roberts Scholar agreement. She argues that because of this breach, she received a poor faculty evaluation in 2021 when she received a rating of "partially meets" for the service requirement, as she had no service with an organization at a national level. Dkt. 1 at ¶ 41. However, while Metzger may have adequately pled a contract and a breach, she must also adequately allege damages flowing from that breach. She alleges no such damages. Metzger does not tie this alleged breach to any specific harm. The closest harm Metzger seems to try and tie it to is the denial of her tenure decision; however, she alleges she is unaware of the specific criteria

---

[6] Even if Metzger were to plead she was unaware her teaching load was higher than contractually required under the Roberts Scholar Agreement in 2016 when she first began teaching, Metzger was certainly aware by March 2018 when, in her Complaint, she alleges she raised her concerns regarding the teaching load during her mid-tenure review. Dkt. 1 at ¶ 34. The five-year statute of limitations would still bar her claim which was not submitted until November 2023.

she failed to meet which resulted in the negative tenure decision, *Id.* at ¶ 61–62, 150, and does not allege that the poor faculty evaluation in 2021 resulted in her denial of tenure.

Metzger next asserts UVA breached the contract when it "attempted to persuade [her] away from the Tenure and Promotion Track, and into a general track position." Dkt. 1 at ¶ 148. She alleges that switching employment tracks is against the School of Nursing's policy, and thus it was a breach of contract. The parties do not provide any of the purported contracts, but UVA does provide a copy of the UVA School of Nursing Appointment, Promotion, and Tenure: Policies, Procedures, and Criteria. Dkt. 5-2. As Metzger does not challenge its authenticity and alleges it is incorporated into her employment contract by reference, Dkt 1 at ¶ 147, I find it is integral to the Complaint and thus may be considered without converting this to a motion for summary judgment.

The only language from this document which addresses this issue states, "[a] candidate who has been denied tenure cannot be placed on one of the academic general faculty tracks." Dkt. 5-2 at 10–11. However, it also provides that such a candidate may apply for a general track position once their employment with the university formally ended. *Id.* at 11. Even were I to accept that some other provision of the unprovided contract prevented Metzger from being placed in a general track position, she readily admits she was never actually moved from a tenure-track position to a general-track position. Dkt. 1 at ¶ 43–45, 60–65, 76. Consequently, Metzger fails to sufficiently allege a breach of a contractual obligation or damage flowing from such a breach.

Metzger also alleges UVA breached its contract with her by not informing her of her right to appeal the negative tenure decision and by not providing her with the specific rationale for her tenure denial, as required by UVA's Tenure and Promotion policies. Dkt. 1 at ¶ 150–51.

First, the UVA School of Nursing Appointment, Promotion, and Tenure: Policies, Procedures, and Criteria document lists no such requirements. *See* Dkt. 5-2. Second, Metzger undercuts her argument that she was not told about her right to appeal when she pleads that at the meeting with the School of Nursing Dean where she was informed of the negative tenure decision, the dean offered her a general-track position so long as she did not appeal the tenure decision. Dkt. 1 at ¶ 60. Thus, she was informed of her right to appeal. Moreover, Metzger successfully filed an appeal. Thus, there is no harm alleged to flow from this purported breach. Similarly, Metzger has not alleged any harm flowing from UVA's purported failure to provide the specific reasons for its negative tenure decision. Therefore, even if the Court was able to find there was a specific contractual obligation to inform Metzger of the precise reasons for the denial of tenure, she has failed to sufficiently plead a harm as required at the motion to dismiss stage.

Finally, Metzger contends UVA breached its contract with her when it based its tenure decision on characteristics such as age, race, gender. She places the source of this alleged duty in the UVA School of Nursing Appointment, Promotion, and Tenure: Policies, Procedures, and Criteria ("UVA's Tenure and Promotion policies and procedures") document, which she alleges "UVA contracted and promised to adhere to . . . ." *Id.* at ¶ 147. But Metzger does not identify any specific policy or procedure UVA purportedly breached. She alleges only that under UVA's Tenure and Promotion policies and procedures, "it is expected [that faculty] will not be judged based on characteristics such as age, race, gender or lack of faculty interests in their research." An allegation that a defendant generally breached a contract, much less an expectation arising from a contract, is not sufficient to survive a motion to dismiss. *See Minor v. Tyson Foods Inc.*, 60 F. Supp.3d 684, 689 (W.D. Va. 2014). *See also Vermeer v. Univ. Delaware*, No. 21-1500-RGA, 2022 WL 4103970, *7–10 (D. Del. Sept. 8, 2022) (denying a motion to dismiss where

plaintiff specified the specific provisions of the policies and procedures which plaintiff alleged the university violated). Accordingly, Count VII must be dismissed.

## IV.     Conclusion

For the reasons stated above, UVA's Motion to Dismiss (Dkt. 4) is **GRANTED**. An appropriate order shall follow.

Entered:  September 30, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

23